GILLAM, APPELLEE, *v.* ROADWAY EXPRESS, INC., APPELLANT.

[Cite as Gillam v. Roadway Express, Inc., 1 Ohio App. 2d 548.]

(No. 5576—Decided March 24, 1965.)

*Mr. Robert E. Shuff,* for appellee.
*Messrs. Buckingham, Doolittle & Burroughs,* for appellant.

HUNSICKER, J. The plaintiff (appellee), Charles Gillam, was employed by the defendant (appellant), Roadway Express, Inc., as a machinist. On April 15, 1962, he was discharged because it was discovered that he had stolen some merchandise which was being handled for transportation by his employer.

Gillam said Roadway Express owed him two weeks' pay for work performed prior to his discharge and, in addition, under a collective bargaining agreement, claimed one week and two days' vacation pay.

Roadway Express admitted the existence of a collective bargaining agreement under which Gillam was employed, and said that the claim for wages earned, and for vacation pay, pursuant to his weekly rate, arose under the terms of that agreement, by the terms of which agreement Gillam must exhaust the remedies set forth therein; and which provides for a grievance procedure and arbitration.

Roadway Express said further it was not indebted to Gillam in any way, and since he did not exhaust the remedies outlined in the collective bargaining agreement, he had no standing in a court of law.

The parties agreed as to the amount of pay due Gillam for work performed, and the amount of pay due for the vacation period, prior to discharge, which was owed under the agreement.

Two questions immediately arise in this matter:

First: Does the fact that an employee-beneficiary of a union's collective bargaining agreement is discharged because of a theft of merchandise from the employer's premises prevent such employee-beneficiary from collecting wages earned and due prior to the discharge; and, in addition thereto, from collecting vacation pay earned and due at the time of discharge?

Second: Is such employee-beneficiary required to comply with the grievance and arbitration procedure of the collective bargaining agreement before commencing an action at law to collect the sums claimed to be due him?

In the instant case, Gillam plead guilty to the crime of grand larceny—the theft of merchandise from the premises where he was employed. He was placed on probation by the court which heard his case. Roadway Express did not sue for the tort committed against it; nor does it make a claim herein for damages suffered by reason of the acts of its servant. There is no claim that Gillam did not perform his work properly. There is a claim that Gillam having committed a wrong against his employer (even though this tort was committed under circumstances wholly unrelated to the work he had performed), his employer may withhold his earnings.

The obligation to render faithful service extends to the work a servant is employed to perform. In the case before us, a manual skill is involved, and not a work of trust and fidelity.

So far as the record before us shows, all of Gillam's work for which he was hired was done in a careful and skillful manner. The crime, being wholly unrelated to the work he was employed to do, cannot be considered a defense to the claim for work performed prior to his discharge.

Whether a counterclaim may lie is a matter that is not before us in this case. See: *Anderson* v. *Graber,* 19 Ohio App. 324.

A case analogous to the instant case is *Lima* v. *Campbell,* 219 Mass. 253, 106 N. E. 858. A claimant for wages was charged with fraud, but since in a prior action the property obtained by fraud had been recovered (as was the stolen merchandise in the action now before us), such fraud was deemed to be no defense to an action for wages due and unpaid.

We determine that the theft of goods under the circumstances here before us is not a defense to the claim of wages due and unpaid at the time of discharge.

Was Gillam required to exhaust the grievance procedure set up in the collective bargaining agreement, or could he maintain an action against his employer without compliance with such procedure? We believe the answer to this question is— yes, he may maintain this present action for wages allegedly due him.

The record shows that on several occasions he requested the business agent of the union to file a grievance for him, which requests were refused.

The term "grievance" as used in a collective bargaining agreement, is not a term of art, having a meaning separate and apart from its meaning in ordinary use. *Timken Roller Bearing Co.* v. *National Labor Relations Board,* 161 F. 2d 949, at p. 955.

One should not be required to do a vain act prior to instituting an action to enforce a right. *Van Gammeren, Admrx.,* v. *City of Fresno,* 51 Cal. App. 2d 235, 124 P. 2d 621; *Telex, Inc.,* v. *Schaefer,* 233 F. 2d 259; *United Protective Workers of America, Local No. 2,* v. *Ford Motor Co.,* 223 F. 2d 49.

There is a factual difference in the instant case, and case of *Republic Steel Corp.* v. *Maddox,* — U. S. ——, 13 L. Ed. 2d 580, decided by the United States Supreme Court on January 25, 1965. On such factual difference (which herein involves wages earned, due and unpaid, and a refusal of the union to process

the grievance), we must refuse to follow the rule laid down in the *Maddox case, supra.*

An annotation on the subject of "Exhaustion of grievance procedures or of remedies provided in collective bargaining agreement as condition of employee's resort to civil courts for assertedly wrongful discharge" may be found in 72 A. L. R. 2d 1439. In the instant case, the discharge was not wrongful, but proper, and called for by the acts of the employee. The general rule, however, as found in such annotation, *supra,* is that an employee need not do a vain act. We think such rule is valid in the case before us.

While we subscribe wholeheartedly to the rule announced in the case of *Ladd* v. *New York Central Rd. Co.,* 170 Ohio St. 491 (especially a statement of the rule at page 500), the facts of this case are different, and on such different facts we must reach a conclusion in accord with the matters before us.

For the reasons stated above, we determine that the properly-discharged employee could maintain his action for wages due and unpaid, including the vacation pay that was earned but not received.

The judgment, therefore, must be affirmed.

*Judgment affirmed.*

DOYLE, P. J., and BRENNEMAN, J., concur.